UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:14-CR-14-D-1

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HARRY C. MANN | MOTION FOR RETURN<br>OF SEIZED PROPERTY AND<br>FOR A *FARMER* HEARING |

Harry Mann moves this Honorable Court for an Order requiring the Government to return the portion of the property seized from him and his wife by the Government that is not traceable to the crimes alleged in the Indictment and for an evidentiary hearing on this motion.

## BACKGROUND

**For five-decades, Harry Mann provides outstanding service to the Navy.**

From the late-1960's until mid-2011, Mr. Mann worked at the Dare County Bombing Range, a Navy practice bombing facility in northeastern North Carolina. Exhibit 1, included below, is a map of the range and close-up picture of the range.





The Navy range consists of 23,000 acres of mostly marshland, and it is adjoined by an Air Force bombing range of a similar size. Over the last five decades, Mr. Mann and his team constructed 12 acres of roads on the Navy range, primarily by sinking double layers of shipping containers (one on top of the other) and covering them with dirt and other materials to provide stability. The team also constructed numerous targets for inert bombs, strafe firing, and laser site target practice by Navy pilots and gunmen. Exhibit 2 below consists of photographs of a few targets and former targets on the range. Most of the targets were constructed using items that were no longer usable for their intended purpose and were sent to the range at no cost to the Navy by the Defense Reutilization and Marketing Office ("DRMO").









Throughout his tenure on the range, Mr. Mann was repeatedly recognized for his outstanding service and, primarily, for his ability to, in the words of one of his commanding officers, "save tax payers millions of dollars annually." Even at 75 years old, he was considered indispensible to the functioning of the range.

### Mr. Mann acquires sizeable savings from legitimate sources.

In addition to working tirelessly at the range, over the last five to six decades, Mr. Mann has been a successful small businessman. He consistently purchased and rented out small investment properties throughout Manns Harbor, North Carolina, and the surrounding area. He also operated a number of other businesses including a sand mine (or "sand pit").[1] From these private ventures, along with his government salary and some inheritance funds, Mr. Mann was able to acquire a sizeable savings.

### The Government seizes substantially all of Mr. Mann's assets.

In the summer of 2009, Mr. Mann reported suspected government waste to the Air Force Office of Special Investigations. Specifically, Mr. Mann believed that the government was being double charged for road maintenance work on the Navy and Air Force ranges. In response to this allegation, Air Force personnel claimed that Mr. Mann was selling government property for personal profit.

An Assistant United States Attorney was assigned in 2010, and in May 2011, the Government seized $245,037 from Mr. and Mrs. Mann during a search of their home. Thereafter, the Government seized $39,868.52 from the bank accounts of Mr. and Mrs. Mann at East Carolina Bank, as well as $5,472.51 from their bank account at Navy Federal Credit Union and $23.00 from his office at the range. Thus, the Government seized at least $290,281.03 in

---

[1] Mr. Mann was previously the subject of a federal investigation into his ownership of one of his businesses, a sand mine or "sand pit" in Dare County, North Carolina. The investigation resulted in a no-fault civil settlement. Case No. 2:97-CV-29-B03.

liquid assets from Mr. and Mrs. Mann. In addition, the Government filed lis pendens an each of their properties, despite that many of these properties were purchased decades ago.

Almost two years after the seizures, in April 2013, Mr. Mann was charged in a four-count indictment alleging that he conspired to steal and stole government property. The theory of prosecution was that Mr. Mann stole refuse from the Navy Dare County Bombing Range, when, at the direction of his commanding officers, he disposed of this property through local businessmen who operated salvage and trucking companies.

This April 2013 Indictment alleged over $6.5 million in forfeitable assets. A review of discovery shows that this figure was determined by aggregating the *initial acquisition value* of each piece of property allegedly disposed of at no cost to the Government. The calculation failed to account for the fact that the items were generally useless when the range obtained them—not to mention that most were bombed-out, shot up, rusted through, and otherwise entirely devoid of any use value before being disposed of. Thus, the Government's theory of loss expressed in the 2013 Indictment equated the value of a brand new car to one that did run when obtained by the range, was then used as a bombing target and destroyed while on the range, and was then left to rust for a decade.

Using this flawed valuation method, the Government calculated its multi-million dollar loss figure and justified seizing all of Mr. Mann's liquid assets and properties. Moreover, there was no evidence that he was hiding or otherwise disposing of assets prior to these seizures, and the total receipts from the suspected conduct accounted for less than half of the liquid assets seized.[2]

---

[2] The Government apparently did not even attempt to restrict its seizure to funds it could obtain through the civil or criminal forfeiture provisions, instead choosing, in essence, to institute a pre-indictment restraining order to cover expected restitution, as opposed to suspected illicit proceeds alone.

**The Government alters its theory of prosecution and reduces its forfeiture claim.**

Almost a year and a half after filing its first indictment—and after Mr. Mann had spent considerable resources mounting a defense to that indictment's allegations—the Government moved to dismiss the indictment and replace it with a new theory of prosecution. Under this new theory, spelled out in its June 2014 Indictment, the Government alleged that Mr. Mann committed bribery and extortion by personally profiting from the removal operations, which the Government apparently now concedes Mr. Mann was asked and authorized to conduct with the help of local salvage and trucking businesses.

The forfeiture allegation in this 2014 Indictment was reduced from more than $6.5 million to just under $334,000, which is the total amount seized during the investigation. Two months after the 2014 Indictment was handed up, the Government released the lis pendens on Mr. Mann's properties, but it has thus far refused to release any of the seized funds to allow Mr. Mann to mount a defense to this new theory of prosecution.

**Mr. Mann cannot obtain financing and therefore needs access to the untainted seized assets to fund his defense.**

On July 30, 2014, despite that it had not yet released the lis pendens on Mr. Mann's properties and had not agreed to release any of the seized funds, the Government moved this Court to order Mr. Mann to hire counsel or request appointed counsel. Prior to filing that motion, counsel for the Government had informed Mr. Mann, through undersigned counsel, of its position that Mr. Mann is technically not indigent.

On August 11, 2014, the Government gave notice to undersigned counsel that the lis pendens had been removed from Mr. Mann's properties. Less than a month later, undersigned counsel entered appearances in this matter. In the meantime, Mr. Mann had attempted to obtain loans against these recently released properties to fund his defense. He was unable to do so

during that time, and undersigned counsel obtained promissory notes and deeds of trust in lieu of immediate payment with a provision requiring payment before trial.

For the next two months, Mr. Mann continued his efforts to obtain a loan. But these efforts were ultimately unsuccessful, as multiple banks refused to loan him money, which undersigned counsel believe is largely a result of the pending charges.

In light of his inability to obtain a loan, Mr. Mann is effectively unable to raise funds to defend himself against the instant charges. This Government-imposed illiquidity hinders not only his ability to pay his legal fee, but also his ability to fund an investigation countering this new theory of prosecution. The Government's seizures therefore effectively render him indigent.

**Even taking the cooperating witnesses' statements as true, a significant portion of the seized funds are not the product of the alleged criminal conduct.**

While Mr. Mann does not concede the truth of the alleged co-conspirators' statements to law enforcement, a review of those statements shows that, if taken as true, the Government's evidence establishes that Mr. Mann received roughly $130,000 from Rudy Lozano and John Williams in total. The Government seized and currently holds $290,281.03 of Mr. Mann's funds. It is not surprising that the Government is over-secured by roughly $160,000 given that the forfeiture calculation in its initial indictment was based on the flawed theory that the value of the material Mr. Mann allegedly stole should be calculated using the initial acquisition value of this junk and refuse.

Nevertheless, the Government currently holds a significant amount of funds that are untainted by the alleged criminal conduct, and Mr. Mann requires access to those assets to fund his defense. In other words, the Government is currently preventing Mr. Mann from using his own legitimate assets to fund his criminal defense.

## LEGAL STANDARD

Due process requires a pretrial adversarial hearing when a defendant claims that a portion of the assets restrained by the Government are untainted and that he has no other funds from which to secure the counsel of his choice. *United States v. Farmer*, 274 F.3d 800, 803-04 (4th Cir. 2001). Thus, a Defendant has a qualified Sixth Amendment right to use his own legitimate funds to fund his defense and a Fifth Amendment right to a hearing to determine whether he needs to utilize untainted seized assets to fund his defense. *Id*. at 804.

For example, in *Farmer*, the defendant was indicted on charges related to trafficking in counterfeit goods. The indictment sought to forfeit property that had been seized two years before during the execution of a search warrant at the defendant's residence and business. The defendant filed a motion for a pretrial hearing "to determine if a portion of the seized funds should be released so that he could pay defense costs," arguing that he had a "Sixth Amendment right to use his legitimate property to hire the attorney of his choice[.]" *Id*. at 802. The district court denied his request and he appealed. The Fourth Circuit recognized that, while "there is no Sixth Amendment right for a defendant to obtain counsel using tainted funds, Farmer still possesses a qualified Sixth Amendment right to use wholly legitimate funds to hire the attorney of his choice." *Id*. at 804. The Fourth Circuit held that because the defendant could make a "threshold showing of need to use wrongly seized assets to pay his attorneys," due process requires a hearing, at which the defendant will have the opportunity "to prove by a preponderance of the evidence that the government seized untainted assets without probable cause and that he needs those assets to hire counsel." *Id*.

**DISCUSSION**

**The Government seized a vast amount of untainted assets.** Three and a half years ago, based on a flawed theory of "loss," the Government seized funds far in excess of those tied to its allegations of wrongdoing. A review of the evidence purportedly supporting the allegations shows that Mr. Mann received less than half of the amount seized from alleged criminal activity. And only a small fraction of the seized funds would be criminal proceeds under its theory, as opposed to substitute assets. Thus, the Government has wrongly seized at least $160,000 from Mr. Mann. Prior to the search, Mr. Mann had numerous sources of legitimate income, including a salary, rental income and other business income. But the Government entirely discounted those sources and instead seized all of his funds. Therefore, a majority of the seized funds are untainted assets.

**Mr. Mann needs those untainted assets to fund his defense.** While Mr. Mann has numerous real properties that were released by the Government three months ago (after being restrained by lis pendens liens for over three years), Mr. Mann has been unable to sell these properties or obtain credit against them. Therefore, while he is not indigent in the balance-sheet sense, he is effectively indigent because he lacks the ability to pay expenses necessary to defend himself in this matter.

Defending himself for the three years between the search of his home in May 2011 and the June 2014 Indictment substantially depleted Mr. Mann's assets. The Government's recent change of prosecution theory now requires him to develop new defenses through a proactive investigation, which he is unable to continue to fund without access to the seized funds. Moreover, undersigned counsel agreed to enter notices of appearance to defend Mr. Mann against the June 2014 Indictment and accept a promissory note and deed of trust on one of his

properties to do so. But this agreement requires him to pay the fee in full before trial. Mr. Mann has diligently attempted to raise the necessary funds for his defense, but largely due to the charges, he has been unable to do so.

While Mr. Mann could potentially sell properties to raise the funds, this would take a tremendous amount of time. The Government is vehemently opposed to Mr. Mann's pending motion for a three month trial date continuance to account for the superseding indictment it says is forthcoming. Thus, it is doubtful that the Government will consent to a trial date extension allowing him sufficient time to prudently liquidate properties in rural areas of northeastern North Carolina.[3] Of course, the Court has the ability to afford Mr. Mann time to do so, which would make this motion moot.

Therefore, absent a trial date continuance giving him sufficient time to prudently liquidate his properties, Mr. Mann requires access to the untainted seized funds to effectively mount his defense to the instant (and forthcoming) charges.

**The Court should hold a hearing and order the release of those untainted funds for use in Mr. Mann's defense.** Mr. Mann has been "effectively rendered indigent by the government's seizure of his property." 274 F.3d at 802. He can show that the Government has seized untainted assets, and he needs those untainted assets to fund his defense. Therefore, under *Farmer* and the Fifth and Sixth Amendments, he is entitled to those untainted assets to fund his defense and to a *Farmer* hearing on this issue.

---

[3] In conversations with the Government on other matters, undersigned counsel have learned that the Government's position is that 12-months is a reasonable amount of time to allow a person to prudently liquidate properties, as significantly less time unfairly forces defendants to offload assets in a "fire sale."

**CONCLUSION**

The Government's seizure of assets far in excess of its proof effectively rendered Mr. Mann indigent. For three-and-a-half years, Mr. Mann has been fighting a theft allegation and has expended tremendous resources in so doing. The Government's last-minute change in prosecution theory necessitates significant additional defense costs. Despite his diligent efforts to obtain funding for the development of a defense to this new theory of prosecution, Mr. Mann has been unable to raise the funds. He therefore needs access to the untainted funds wrongfully seized by the Government to fund his defense.

This Court should order the Government to release those untainted funds to Mr. Mann or his counsel for use in his defense against this ongoing criminal prosecution, and it should hold a hearing on this matter.

Respectfully submitted, this the 17th day of November, 2014.

CHESHIRE PARKER SCHNEIDER & BRYAN, PLLC

/s/ Elliot S. Abrams
Elliot S. Abrams
N.C. State Bar# 42639
P. O. Box 1029
Raleigh, NC 27602
Elliot.Abrams@cheshirepark.com

TARLTON LAW, PLLC

/s/ Raymond C. Tarlton
Raymond C. Tarlton
N.C. State Bar# 38784
P.O. Box 1386
Raleigh, NC 27602
Tarlton@tarltonlaw.com

*Attorneys for Defendant*

# **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a true and correct copy of the foregoing MOTION FOR RETURN OF SEIZED PROPERTY AND FOR A *FARMER* HEARING through the electronic service function of the Court's electronic filing system, as follows:

Susan Menzer  (susan.menzer@usdoj.gov)
Assistant United States Attorney
310 New Bern Avenue
Federal Building, Suite 800
Raleigh, NC  27601-1461

This the 17th day of November, 2014.

          CHESHIRE PARKER SCHNEIDER & BRYAN, PLLC

          /s/ Elliot S. Abrams
          Elliot S. Abrams